UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————— x
                                          :
UNITED STATES OF AMERICA,                 :
                                          :
        v.                                : No. 10 CR. 336 (LAK)
                                          : ECF Case
CHAD ELIE and JOHN CAMPOS,                :
                                          :
                       Defendants.        :
———————————————————————— x

**DEFENDANT JOHN CAMPOS'S MEMORANDUM OF LAW IN
OPPOSITION TO THE GOVERNMENT'S MOTION *IN LIMINE***

HAFETZ NECHELES & ROCCO
Frederick P. Hafetz
Kathleen E. Cassidy
500 Fifth Avenue, 29th Floor
New York, New York 10110
(212) 997-7595


CLYDE SNOW & SESSIONS
Neil A. Kaplan
Anneli R. Smith
201 South Main Street, Suite 1300
Salt Lake City, UT 84111
(801) 322-2516

*Attorneys for Defendant John Campos*

## **TABLE OF CONTENTS**

                **Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ...................................................................................................................1

I.     THE GOVERNMENT SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE RELATED TO ALLEGED VIOLATIONS OF CHANGE OF CONTROL REGULATIONS IN CONNECTION WITH THE JOHNSON/ELIE INVESTMENT. ....................................................................................................2

II.    THE GOVERNMENT SHOULD BE PRECLUDED FROM OFFERING EVIDENCE OF OTHER WRONGS RELATED TO THE DIXIE DESERT TRANSACTION. ....................................................................................................6

III.   THE COURT SHOULD PRECLUDE EVIDENCE RELATED TO THE FTC'S 2010 INVESTIGATION INTO "POTENTIAL FRAUD." ...............................................13

IV.   THE COURT SHOULD PRECLUDE EVIDENCE RELATED TO SUNFIRST'S RENAWAL OF A $200,000 LINE OF CREDIT TO MR. CAMPOS. ............................14

V.    THE GOVERNMENT'S MOTION TO PRECLUDE THE DEFENSE FROM INTRODUCING CERTAIN EVIDENCE AND MAKING CERTAIN ARGUMENTS IS PREMATURE AND UNNECESSARY. ............................................15

CONCLUSION .....................................................................................................................16

# **TABLE OF AUTHORITIES**

**CASES** **Page(s)**

*United States v. Afjehei*, 869 F.2d 670 (2d Cir. 1989) ............................................................ 4, 11, 12
*United States v. Aminy*, 15 F.3d 258 (2d Cir. 1994) ....................................................................... 12
*United States v. Corey*, 566 F.2d 429 (2d Cir. 1977) ....................................................................... 5
*United States v. Curley*, 639 F.3d 50 (2d Cir. 2011) ....................................................................... 5
*United States v. Gonzalez*, 110 F.3d 936 (2d Cir. 1997) .................................................................. 2
*United States v. Kahn*, 472 F.2d 272 (2d Cir. 1973) ........................................................................ 8
*United States v. Livoti*, 196 F.3d 322 (2d Cir.1999) ..................................................................... 8, 9
*United States v. McCallum*, 584 F.2d 471 (2d Cir. 2009) ........................................................... 5, 11
*United States v. Midyett*, 603 F. Supp. 2d 450 (E.D.N.Y. 2009) .................................................. 8, 9
*United States v. Ortiz*, 857 F.2d 900 (2d Cir. 1988) ........................................................................ 2
*United States v. Owens*, 424 F.3d 649 (7th Cir. 2005) .................................................................. 11
*United States v. Pitre*, 960 F.2d 1112 (2d Cir.1992) ....................................................................... 8
*United States v. Schatzle*, 901 F.2d 252 (2d Cir. 1990) ................................................................... 8
*United States v. Stein*, 521 F. Supp. 2d 266 (S.D.N.Y. 2007) (LAK). .................................... passim
*United States v. Temple*, 862 F.2d 821 (10th Cir. 1998) ............................................................... 10
*United States v. Townsend*, No. 06 Cr. 34 (JFK), 2007 WL 1288597 (S.D.N.Y. May 1, 2007) .... 3
*United States v. Utter*, 97 F.3d 509 (11th Cir. 1996) ..................................................................... 10
*United States v. Varoudakis*, 233 F.3d 113 (1st Cir. 2000) ........................................................... 10

**RULES**

Fed. R. Evid. 401 ......................................................................................................................... 2, 4
Fed. R. Evid. 402 ............................................................................................................................. 2
Fed. R. Evid. 403 ....................................................................................................................... 5, 11
Fed. R. Evid. 404(b) ................................................................................................................ passim

**Introduction**

Seeking admission as background and Rule 404(b) evidence, the government in its *in limine* brief offers a barrage of allegations by which the government seeks to prove a series of violations of law by John Campos having nothing to do with the criminal charges here. The proffered violations include banking regulations on change of control of stock ownership, insider loans, stealing from fellow investors, and tax evasion as well as the FTC's investigation of fraud by Jeremy Johnson—allegations nowhere charged in the indictment. This assortment of uncharged violations of law including criminal acts by Mr. Campos more nefarious than the charged crimes of unlawful processing of poker—conduct which the government concedes was done transparently—has no place in the trial. These uncharged allegations are not only irrelevant and highly prejudicial to Mr. Campos, but also threaten to engulf the trial in needless delay and to confuse the jury.

Specifically, the government should be precluded from offering any evidence as to: (1) violations of bank regulations related to change of control filing requirements in connection with the proposed Johnson and/or Elie investment, (2) alleged wrongful acts in connection with a transaction involving the Dixie Desert Investment Group in 2009, (3) notification to SunFirst Bank ("SunFirst") by the Federal Trade Commission in 2010 about potential fraud by entities involving Jeremy Johnson, an alleged co-conspirator, and (4) SunFirst's renewal of a $200,000 line of credit to Mr. Campos in 2010.

The government has the burden of establishing the admissibility of this proffered evidence. *United States v. Stein*, 521 F. Supp. 2d 266, 268 (S.D.N.Y. 2007) (LAK). To be admissible as other act evidence under Federal Rule of Evidence 404(b), the government must show that: (1) the evidence is being introduced for a proper purpose "such as proof of motive,

1

opportunity, intent;" (2) the evidence is relevant, under Rules 401 and 402, to an issue in the case; and (3) the evidence satisfies the probative-prejudice balancing test of Fed. R. Evid. 403. *United States v. Ortiz*, 857 F.2d 900, 903 (2d Cir. 1988); Fed. R. Evid. 404(b).  Separate from Rule 404(b), the trial court may also admit evidence of other crimes, wrongs, or acts if the act "arose out of the same transaction or series of transactions as the charged offense," is "inextricably intertwined with the evidence regarding the charged offense," or is "necessary to complete the story of the crime [on] trial."  *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997).  But, the government must show that such "background" evidence is relevant and that its probative value is not outweighed substantially by its unfair prejudice.  *Stein*, 521 F. Supp. 2d at 270-71.

The government completely fails to satisfy its burden of establishing admissibility with respect to the four evidentiary areas listed above and should be precluded from offering any such evidence at trial.

**I.     The Government Should Be Precluded From Introducing Evidence Related To Alleged Violations Of Change Of Control Regulations In Connection With The Johnson/Elie Investment.**

The government seeks to introduce evidence that Mr. Campos solicited a $10 million investment in SunFirst from co-conspirator Jeremy Johnson and co-defendant Chad Elie, the co-owners of Elite Debit.  The government will argue that Mr. Campos recommended that SunFirst agree to accept poker processing transactions from Elite Debit in exchange for the capital infusion.  Government's Motion in Limine dated March 12, 2012 ("Gov't Br.") at 1, 7.

For purposes of this motion, we assume that the government may be permitted to introduce evidence related to the $10 million proposed investment in SunFirst by Johnson and Elie, which would result in their ownership of stock in SunFirst's holding company, to argue it

2

was an inducement for SunFirst to undertake processing poker for Elite Debit and that SunFirst agreed because it was financially desperate.[1] Gov't Br. 14-15. However, the government also seeks to introduce evidence that Mr. Campos and SunFirst violated regulations governing change of control filing requirements[2] for bank shareholders. Specifically, the government asserts that the transaction "required regulatory approval" because Johnson and Elie were "acting in concert" and would collectively own "a greater than 10% share of SunFirst." Gov't Br. 7. It claims that "[i]n order to avoid regulatory scrutiny, however, Campos agreed with Johnson to structure the purchase so that it would appear to come from two independent investors who were not acting together." Gov't Br. 7.

Significantly, although the government seeks to admit the regulatory violation evidence it never states that it is offering this evidence as background evidence or explains why it would be relevant for any background purpose. The fact that the government offers no reason why the alleged regulatory violation bears any relation to any permissible background purpose is enough to end the inquiry.

But, even if it tried, the government could proffer no plausible connection between the alleged regulatory violation and a permissible background purpose. The alleged regulatory violation is clearly not "crucial information without which the jury will be confused or the government's theory of the case unfairly curtailed." *United States v. Townsend*, No. 06 Cr. 34 (JFK), 2007 WL 1288597, at *2 (S.D.N.Y. May 1, 2007). Details of the supposed violation of change of control regulations are at most a minor detail in the government's story of the proposed $10 million investment by Johnson and Elie. The alleged regulatory violation simply has no bearing on any fact of consequence in a trial about whether Mr. Campos violated

---

[1] The premise of the government argument will be disputed at trial.
[2] The government does not cite the actual regulatory rules allegedly violated.

3

gambling laws by facilitating the processing of online poker transactions through SunFirst Bank. Thus, the government has made absolutely no showing that would satisfy the relevance requirement that the evidence has "any tendency to make the existence of any fact that is *of consequence* to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added).

Even if evidence of the alleged violation of change of control rules had some marginal relevance to a permissible background purpose, the evidence should be excluded under Rule 403. Proof of these allegations, and Mr. Campos's response, would entail explanation of the complex federal statutes and regulations governing when change of control applications must be filed, when investors investing in different names or entities must be pooled for purposes of change of control, and when individual investors are "acting in concert." This would likely require both parties to put on expert testimony regarding these rules and their application to these facts. The potential for confusion of the issues and waste of time is clear. Further, the danger of the jury viewing this as evidence of Mr. Campos's propensity to violate the law is high. The jury may not understand the difference between violating a banking regulation and violating a criminal law and may just see this as evidence of Mr. Campos's character as a "rule-breaker." The dangers of unfair prejudice, confusion of the issues, and waste of time substantially outweigh any possible probative value of this evidence. *United States v. Afjehei*, 869 F.2d 670, 673 (2d Cir. 1989) (evidence was inadmissible "given the minuscule probative value…for the purposes here advanced by the government").

Nor does the government articulate any reason why the evidence of the alleged regulatory violation would be admissible under Rule 404(b). In the section of its brief dealing with admissibility under Rule 404(b), Gov't Br. 18-21, the government addresses only the evidence

4

on "the solicitation of the $10 million investment from Elie and Johnson," but does not address the admissibility of the alleged change of control violation by Mr. Campos under Rule 404(b). Since the government has the burden of establishing admissibility, this alone is sufficient to preclude the evidence. *Stein*, 521 F. Supp. 2d at 268 (government has burden of establishing admissibility).

Nevertheless, if the government is suggesting that the regulatory violation is admissible as a prior similar act to show Mr. Campos's knowledge or intent, the government must "identify similarities between the charged and uncharged [acts] and articulate how the similarities identified support an inference of knowledge or intent." *Stein,* 521 F. Supp. 2d at 270. The government has not identified—nor could it—any similarity between the alleged violation of change of control rules and the charge of processing poker in violation of gambling laws. *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) ("To satisfy the relevance inquiry, the evidence must be sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the state of mind inference advocated by the proponent of evidence.") (internal citations, quotation marks, and brackets omitted); *United States v. Corey*, 566 F.2d 429, 431 (2d Cir. 1977) (The probative value of similar act evidence is "dependent upon the existence of a close parallel between the crime charged and the acts shown.") (quotation marks omitted).

The evidence cannot be admitted as Rule 404(b) evidence for the additional reason that, as already discussed, the evidence related to the regulatory violation cannot withstand the probative-prejudice balance test of Rule 403. In sum, the evidence related to the alleged regulatory violations amounts to nothing more than "propensity evidence in sheep's clothing" and must be precluded. *United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009).

5

## II. The Government Should Be Precluded From Offering Evidence of Other Wrongs Related to the Dixie Desert Transaction.

Under the heading of what the government terms the "Dixie Desert Investment Group Scheme," the government seeks to introduce a number of supposedly wrongful acts by Mr. Campos and SunFirst that have nothing to do with the allegations in the indictment and that if admitted, threaten to turn a trial about poker processing into a mini-trial (if not a full-fledged trial) on the Dixie Desert transaction. Gov't Br. 9-10. In brief, the Dixie Desert Transaction was a two-part transaction that took place in 2009 designed to alleviate the financial pressure on SunFirst's holding company (SunFirst Corporation) when Zions Bank demanded repayment from SunFirst Corporation of a note it held for $5 million. In the first step of the transaction, a group of investors put together by Mr. Campos called "Dixie Desert Investment Group" purchased the $5 million note from Zions for $4.3 million. In the second stage of the transaction, the Dixie Desert Investment Group ("Dixie Desert") converted the note it held into stock of SunFirst Corporation. In three paragraphs of its motion, Gov't. Br. 9-10, the government alludes to no less than seven supposedly wrongful acts committed by Mr. Campos and SunFirst related to Dixie Desert. These allegations include stealing by Mr. Campos of interest payments due to his co-investors, tax evasion, loans presumably in violation of bank regulations and false statements to regulators concerning the interest payments.[3] Gov't. Br. 9-10.

These Dixie Desert allegations are unfounded, and Mr. Campos will prove them to be false at trial, if necessary, including through the very Dixie Desert documents provided by the government in discovery. However, for the reasons discussed below, the government's Dixie

---

[3] As to the allegation of false statements to regulators, it is unclear whether the government is even saying that Mr. Campos participated in the alleged false statements.

6

allegations should be precluded in their entirety because they have nothing to do with the charges in this case.

Feebly claiming that the Dixie allegations of wrongful conduct by Mr. Campos are admissible as "background and context and to complete the story of the charged crimes," the government states that the Dixie transaction, as one of the sources of payments Campos received from SunFirst, shows that: "Campos's livelihood depended in large part on SunFirst," and thus "help[s] explain Campos's role in the conspiracy, how he was the primary driver of SunFirst's poker processing business, and how his own financial well-being depended almost exclusively on keeping the bank afloat." Gov't Br. 9, 15.

However, the government never articulates how the Dixie transaction could "help explain Campos's role in the conspiracy." The conspiracy alleged in the indictment is a conspiracy to process poker payments in violation of the Unlawful Internet Gambling Enforcement Act. None of the other Dixie investors are named by the government as co-conspirators. The story of the Dixie transaction, let alone the inaccurate story of wrongdoing in connection with this transaction which the government seeks to tell at trial, has absolutely nothing to do with the alleged conspiracy to process unlawful internet gambling. Nor has the government advanced any reason why the supposed wrongdoing with respect to Dixie proves that Mr. Campos "was the primary driver of SunFirst's poker processing business." The government can prove Mr. Campos's role in bringing poker processing to the bank without introducing evidence of Mr. Campos's allegedly wrongful conduct in a totally unrelated context.

Even if the Dixie Desert allegations of wrongdoing had some minimal relevance, the Court should preclude the evidence under Rule 403 because there is a great potential for prejudice. The wrongful acts alleged by the government—misappropriating interest payments to

7

his own use, lying to regulators, and tax evasion—are more inflammatory and sensational than the acts alleged in the indictment—processing payments (transparently) for online poker companies, charges which do not entail allegations of stealing or dishonesty. "Evidence shall be excluded as unduly prejudicial when it is 'more inflammatory than the charged crime.'" *United States v. Midyett*, 603 F. Supp. 2d 450, 456 (E.D.N.Y. 2009) (quoting *United States v. Livoti,* 196 F.3d 322, 326 (2d Cir.1999)). *See also United States v. Pitre,* 960 F.2d 1112, 1120 (2d Cir.1992) (no unfair prejudice where "evidence of prior narcotics transactions 'did not involve conduct any more sensational or disturbing than the crimes with which [the appellants were] charged.' "). The jury is highly likely to see the proffered evidence as evidence of Mr. Campos's bad character or nature as a law-breaker.

Moreover, the government's attempt to prove the Dixie-related acts and Mr. Campos's refutation of them would entail complicated and extensive documentary evidence and numerous additional witnesses involved in the Dixie transaction, including bank regulators. Additionally, the regulatory violations alleged with respect to loans for the note purchase and insider loans would require an inquiry into complex banking regulations governing the appropriate purposes of bank loans and loans to officers and directors and testimony on this subject. The proof by both parties as to these allegations would unnecessarily prolong the trial, become a sideshow distraction, and confuse the jury. *Stein*, 521 F. Supp. 2d at 271, 272 (in considering risk of undue delay and confusion of the issues, Court took into account not only government's proof but also defendant's refutation). These allegations should be precluded under Rule 403. *See, e.g., United States v. Kahn*, 472 F.2d 272, 279 (2d Cir. 1973) (upholding exclusion of proffered evidence because it "presented the very real danger of degenerating into a side trial"); *United States v. Schatzle*, 901 F.2d 252, 256 (2d Cir. 1990) (finding that the trial court was "well within its

8

discretion in concluding that the potential delay from allowing a mini-trial . . . outweighed any likely probative value such an inquiry would yield").

Alternatively, the government claims that the evidence is admissible under Rule 404(b). The government urges that the Dixie conduct and "ensuing payments to Campos" are evidence of Mr. Campos's and SunFirst's financial distress, which is relevant to the non-propensity purposes of "(a) Campos's motive for committing the charged offenses; (b) opportunity, because the evidence demonstrates Campos's authority and control within the bank; and (c) Campos's knowledge of the bank's finances and its reliance on the capital brought in by Elie and Johnson and the revenue generated by processing poker transactions." Gov't Br. 18.

In essence, the government claims that it is entitled to prove that Mr. Campos lied to government regulatory authorities, stole from fellow investors and committed income tax evasion in order to prove that Mr. Campos was in financial distress in 2009. Under the guise of Rule 404(b), the government seeks to introduce improper propensity evidence in the form of uncharged bad acts in connection with Dixie, acts which are "more inflammatory" than the conduct charged. *United States v. Midyett*, 603 F. Supp. 2d 450, 456 (E.D.N.Y. 2009) ("Evidence shall be excluded as unduly prejudicial when it is 'more inflammatory than the charged crime.'") (quoting *United States v. Livoti,* 196 F.3d 322, 326 (2d Cir.1999)).

To begin with, these inflammatory allegations have no probative value in terms of proving Mr. Campos's financial distress in 2009 when poker processing began. As to the allegation of income tax evasion, even if true, it would not have been committed in 2009—if Mr. Campos failed to report any Dixie income from 2009, the earliest he could have failed to report it was April 2010, assuming no extension for filing. With respect to the allegations of misstatements to regulators, the government does not even allege that Mr. Campos made the

9

allegedly false statements to regulators. *See United States v. Temple*, 862 F.2d 821, 824 (10th Cir. 1998) ("If weak circumstantial evidence of prior bad acts is admitted under Rule 404(b), there is an inherent danger of prejudice to the defendant.")  As to the alleged stealing from co-investors—which Mr. Campos denies and which will be refuted at trial if necessary—has no relevance to the charge of unlawfully processing poker.

While the government is free to introduce evidence designed to show that Mr. Campos had a financial motive to commit the charged crimes, it may not put in evidence of other uncharged crimes it thinks Mr. Campos committed due to the same financial motive and then pass this other act evidence off as "motive" evidence.  Rule 404(b) simply does not allow prejudicial proof of prior unlawful conduct in order to show a motive to commit a later and completely dissimilar crime.  Such a chain of reasoning depends upon the improper inference that the defendant responds to financial stress by committing crimes. *See, e.g., United States v. Varoudakis*, 233 F.3d 113, 120 (1st Cir. 2000) (in arson prosecution for burning of defendant's restaurant, it was reversible error to admit evidence of defendant's burning of car to show financial motive for charged crime, because that use of evidence was based on forbidden inference that defendant had propensity to respond to financial stress by committing arson); *United States v. Utter*, 97 F.3d 509, 514 (11th Cir. 1996) (excluding evidence that defendant, in a separate incident, threatened to "burn out" tenant after she did not pay rent, offered to show "how defendant reacts to financial stress," because such prior bad act evidence was relevant to defendant's commission of charged offense only if criminal propensity were inferred).  If the government truly seeks to show Mr. Campos's poor financial condition, there are much more direct ways of proving that.  The government can introduce evidence designed to prove the facts it asserts on page 9 of its brief, e.g., that Mr. Campos had no liquid assets, his residence was in

10

foreclosure, and he had no outside income other than income from SunFirst. What the government cannot do under Rule 403 is to show that Mr. Campos is a thief, and argue that therefore he must have needed money, which explains why he would have agreed to process poker (a crime that has nothing to do with theft). *See, e.g., United States v. McCallum*, 584 F.2d 471, 477-78 (2d Cir. 2009) (admission of prior narcotics felony convictions, ostensibly offered to show intent to deal drugs and knowledge of drug dealing, was error under Rule 403 because government had other less prejudicial evidence on same point); *United States v. Owens*, 424 F.3d 649, 65-55 (7th Cir. 2005) (court abused its discretion under Rule 403 in admitting evidence suggesting that defendant had previously robbed same bank where other non-propensity evidence could have supplied the basis for defendant's alleged decision to target that particular bank).

The government also argues that Mr. Campos's alleged wrongful acts in connection with the Dixie transaction are relevant to establish "opportunity" to commit the crime charged by showing Mr. Campos's "authority and control in the bank." The wrongful conduct alleged—misrepresentations to regulators, misappropriating money from fellow Dixie investors, and filing a false tax return—are uncharged crimes that go to Mr. Campos's character and are of no relevance to proving Mr. Campos's "authority and control" of the Bank.

Nor does the alleged wrongful Dixie conduct by Mr. Campos establish "Campos's knowledge of the bank's finances and its reliance on the capital brought in by Elie and Johnson." Again, the government will have ample proof of Mr. Campos's knowledge on this point without polluting the trial with inflammatory allegations that have "minuscule"—if any—probative value for the purposes advanced by the government. *Afjehei*, 869 F.2d at 673 (evidence was

inadmissible "given the minuscule probative value…for the purposes here advanced by the government").

Finally, the government contends that Mr. Campos's alleged wrongdoing in connection with the Dixie transaction is "also relevant to Campos's state of mind: his willingness to hide the true nature of the Dixie transactions and the monies he received from that transaction." Gov't Br. 19. Here, simply put, the government seeks to prove Mr. Campos's wrongful intent in this case by proving that he previously made false statements to regulators and stole money from his co-investors. This effort by the government to admit prior criminal conduct to prove intent is undermined by the clear case law that prior wrongful acts to prove intent must be similar to the act charged at trial: "[i]n order to establish that other act evidence is probative of knowledge or intent, the government must show that the other act is sufficiently similar to the charged act to 'permit the inference of knowledge or intent advocated' by the government." *Stein*, 521 F. Supp. 2d at 272 (quoting *United States v. Aminy*, 15 F.3d 258, 260 (2d Cir. 1994). *Afjehei*, 869 F.2d at 674 (Similarity "is judged by the degree in which the prior act approaches near identity with the elements of the offense charged.") (internal quotation marks omitted). In no way is the proffered Dixie Desert conduct similar to the conduct charged here nor does the government even attempt to argue that it is.

In sum, the government utterly fails to satisfy the requirements for admission under Rule 404(b). In reality, the government seeks to pollute this case with highly prejudicial and irrelevant evidence that Mr. Campos has a propensity to committing crimes. *Stein*, 521 F. Supp. 2d at 274 ("In the absence of any articulated similarities, the government is seeking an impermissible character inference."). The government's proffered evidence on Dixie should be rejected.

12

### III. The Court Should Preclude Evidence Related To The FTC's 2010 Investigation Into "Potential Fraud."

The government has indicated that it intends to introduce, as background, evidence to show that in 2010, the Federal Trade Commission contacted SunFirst "about potential fraud involving Johnson's [non-poker related] entities." Gov't Br. 7. Although the government never explains its basis for introducing this evidence, presumably it will argue to the jury that if Mr. Campos knew about the allegations of fraud involving non-poker companies processed through Johnson, he should have been wary of processing poker for Johnson's entities as well.

To begin with, the government makes no allegation that Mr. Campos knew that the FTC had contacted SunFirst about investigating Jeremy Johnson for fraud relating to Johnson's processing activities.

Beyond this, the allegation of fraudulent activity by Johnson has no relevance to Mr. Campos's trial. Mr. Campos is charged with unlawful processing of online poker in connection with Johnson's company, Elite Debit. There is no charge of fraud against Mr. Campos. Even assuming that Mr. Campos knew Johnson was being investigated for fraud, this would prove nothing with regard to the issues in this case.

On the other hand, such evidence would be highly prejudicial to Mr. Campos. It would be akin to negative character evidence against Mr. Campos. That is, there is a spillover prejudice danger that the jury could draw the inference that since Johnson, a person associated with Mr. Campos in the online poker activity at issue here, was a suspected fraudster, that Mr. Campos was a bad person. And, the jury could draw the inference that if Johnson's business activities were criminal, then the online poker business activity in which Mr. Campos was involved with Johnson was also criminal. For these reasons, under Rule 403, the Court should preclude

13

evidence that the FTC was investigating Johnson for fraud in connection with his processing activities.[4]

### IV. The Court Should Preclude Evidence Related to SunFirst's Renewal Of A $200,000 Line Of Credit To Mr. Campos.

The government has also indicated that it intends to introduce evidence related to a $200,000 line of credit for Mr. Campos that SunFirst renewed in 2010. It claims that SunFirst renewed the line of credit in February 2010 "even though [Campos] had an unsatisfactory credit score and insufficient cash flow to service the debt." Gov't Br. 9.

The government seeks to introduce this as background evidence, on the grounds that it "helps explain Campos's role in the conspiracy, how he was the primary driver behind SunFirst's poker processing business, and how his own financial well-being depended almost exclusively on keeping the bank afloat." Gov't Br. 15. However, the government has offered no connection between the renewed line of credit and the charged poker conspiracy beyond the fact that the loan was renewed "in the midst of poker processing." Gov't Br. 9. It thus has no relevance to Mr. Campos's role in the conspiracy. To the extent the government is arguing that the allegedly improper renewal shows that Mr. Campos had a financial motive for bringing poker processing to the bank, there is a disconnect, because the allegedly improper renewal occurred after SunFirst was well into poker processing.

The government also submits that this evidence is admissible under Rule 404(b), to show "(a) Campos's motive for committing the charged offenses; (b) opportunity, because the evidence demonstrates Campos's authority and control within the bank; and (c) Campos's

---

[4] We assume that the government does not intend to introduce evidence that Johnson was ultimately indicted in the District of Utah on fraud charges for misleading marketing practices completely unrelated to poker processing, as this would be unfairly prejudicial to Campos and occurred after the period of the conspiracy alleged in the Indictment.

knowledge of the bank's finances and its reliance on the capital brought in by Elie and Johnson and the revenues generated by processing poker transactions." Gov't Br. 18. As noted, the loan renewal is irrelevant to Mr. Campos's motive because it occurred after the poker processing began. It is likewise irrelevant to Mr. Campos's authority and control, because the government does not allege that Mr. Campos did anything improper in seeking to have the loan renewed. For example, it does not allege that Mr. Campos submitted false financial statements or otherwise improperly manipulated the bank into renewing his loan; it merely alleges that SunFirst should not have renewed the loan in light of Mr. Campos's financial situation. Finally, the loan renewal could not possibly have any bearing on Mr. Campos's knowledge of the bank's finances, when the question involved was Mr. Campos's, not the bank's, finances.

The evidence related to the $200,000 line of credit should be precluded because it is merely another attempt by the government to insert prejudicial character evidence into the trial— in this instance, evidence that Mr. Campos somehow took advantage of the bank. It is irrelevant to any proper purpose and any conceivable probative value is vastly outweighed by the potential for prejudice.

### V.    The Government's Motion To Preclude The Defense From Introducing Certain Evidence And Making Certain Arguments Is Premature And Unnecessary.

For the reasons set forth in Section III. of Mr. Elie's brief dated March 19, 2012, Mr. Campos joins in Mr. Elie's opposition to the government's motion to preclude the defense from introducing certain evidence and making certain arguments.

**Conclusion**

For the foregoing reasons, we respectfully request that the Court deny the government's motion *in limine* to introduce evidence of uncharged conduct against Mr. Campos, and to preclude evidence directly relevant to the issues in this case.

Dated: March 19, 2012
      New York, New York

HAFETZ NECHELES & ROCCO

By: _____/s/_____
    Frederick P. Hafetz
    Kathleen E. Cassidy

500 Fifth Avenue, 29th Floor
New York, New York 10110
(212) 997-7595


CLYDE SNOW & SESSIONS
By:  Neil A. Kaplan
     Anneli R. Smith

201 South Main Street, Suite 1300
Salt Lake City, UT 84111
(801) 322-2516

*Attorneys for Defendant John Campos*